# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|                              |   |                      |
|------------------------------|---|----------------------|
| UNITED STATES OF AMERICA,    | ) |                      |
|                              | ) |                      |
| Plaintiff,                   | ) |                      |
|                              | ) |                      |
| v.                           | ) | No. 05-CR-411 (ESH)  |
|                              | ) |                      |
| MICHAEL P.S. SCANLON,        | ) |                      |
|                              | ) |                      |
| Defendant.                   | ) |                      |

## MEMORANDUM OPINION AND ORDER

In November 2005, defendant Michael Scanlon ("Scanlon" or "defendant") pled guilty to a one-count information charging conspiracy with three objects: bribery in violation of 18 U.S.C. § 201; property mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343; and honest-services mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343, and 1346.

Before the Court is defendant's motion to modify or amend his plea agreement based on *United States v. Skilling*, 130 S. Ct. 2896 (2010). Specifically, Scanlon argues that the honest-services charges to which he plead guilty can no longer be constitutionally maintained against his conduct. If correct, this conclusion would have material consequences for Scanlon's sentencing offense level and restitution. Based on the arguments of counsel at a hearing on November 23, and for the reasons set forth below, the Court denies his motion.

## FACTS

Scanlon pled guilty to conspiring with Jack Abramoff to defraud certain of Abramoff's Native American Indian Tribe clients ("Tribes") of their right to Abramoff's honest services. (Plea Agreement ¶ 3.) The scheme involved Abramoff taking advantage of his relationship of trust and confidence with his clients in order to convince them to hire Scanlon. (Factual Basis

¶ 6.) Scanlon would then secretly kick back to Abramoff approximately fifty percent of his company's net profits gained from these clients. (*Id.*) With respect to one of the clients, Abramoff misrepresented to the tribe that he would perform lobbying work "pro bono," when in fact he received the fifty-percent kickback from Scanlon under their arrangement. (*Id.*)

Under the government's theory of fiduciary duty, tribal clients who had hired Abramoff more than once were, by virtue of such repeat hiring, relying upon an ongoing relationship of trust and loyalty with Abramoff, giving rise to his fiduciary duty to provide them with his honest services.[1] Throughout this scheme, "Scanlon believed that [Abramoff] had a duty to act in the best interest of his clients in these matters and that [Abramoff]'s clients did in fact trust and rely upon [Abramoff]." (*Id.*) He also "knew that [Abramoff] promoted himself as having knowledge superior to his clients regarding lobbyist and grass roots activity and [Abramoff] encouraged his clients to trust his judgment in these matters." (*Id.*)

## ANALYSIS

In *United States v. Skilling*, the Supreme Court addressed a challenge to the constitutionality of the honest-services fraud statute, 18 U.S.C. § 1346, on the grounds that the statute was impermissibly vague. Declining Skilling's invitation to void the statute in its entirety, the majority instead held that the statute could only be constitutionally applied to those cases that formed the "core" of honest-services fraud prior to the Supreme Court's ruling in *McNally v. United States*, 483 U.S. 350 (1987), namely bribery or kickback schemes. In doing so, the Court rejected both the government's argument that § 1346 could also permissibly

---

[1] Scanlon's Information, Plea, and Factual Basis were carefully calibrated to deliberately identify only certain fees paid to Abramoff in connection with tribal clients who had hired Abramoff more than once and only the fees paid in connection with those successive hirings (and not the initial ones) as the basis for the honest-services fraud charges. (*See, e.g.*, Information ¶¶ 8-18; Factual Basis ¶¶ 6-8; Plea Agreement ¶ 5.)

2

proscribe "undisclosed self-dealing" cases as well as the opinion of Justice Scalia that the statute be struck down in its entirety.

The question before the Court is what effect, if any, *Skilling* has on Scanlon's plea. The government contends that defendant's plea is unaffected by *Skilling* because it sets forth a classic kickback scheme. Scanlon, however, argues that *Skilling* reached a narrower holding, approving only "the prosecution of *certain types* of kickback cases," of which he claims his case is not one. (Defendant's Motion ["Def.'s Mot."] at 2-3.) As explained below, Scanlon's interpretation of *Skilling* is erroneous.

Scanlon's primary argument depends on his interpretation of scattered passages from the majority's opinion in *Skilling*. Seizing on this language, Scanlon argues that *Skilling* divided kickback cases into two heretofore unknown categories: "kickback cases within the 'core' of 'pre-*McNally* case law'" (*id.* at 10 (emphasis omitted)), which according to Scanlon are still encompassed by § 1346, and kickback cases that fall outside this "core," which according to Scanlon were invalidated under *Skilling*.

Scanlon appears to define the scope of so-called "non-core" kickback schemes under two alternative theories. First, Scanlon seizes on language from a single footnote in *Skilling* to argue for the existence of what he terms the "literal core of pre-McNally case law," which involved fraud relating only to public official-public, employee-employer, and union official-union member relationships. (*Id.* at 3.) "Beyond these three examples," Scanlon argues, "the *Skilling* Court provided no further elucidation of this 'core' concept." (*Id.*)

Scanlon reads too much into this footnote. *Skilling* made clear (and the parties agree) that bribery and kickback schemes under § 1346 must involve a breach of fiduciary duty, as this duty establishes the right to one's honest services out of which the victim of § 1346 is defrauded.

*See, e.g.*, *Skilling*, 130 S. Ct. at 2930 ("The 'vast majority' of the honest-services cases involved offenders who, *in violation of a fiduciary duty*, participated in bribery or kickback schemes." (emphasis added)). In addressing Justice Scalia's concern that the Courts of Appeals pre-*McNally* did not uniformly agree as to the source and scope of fiduciary duties, the *Skilling* majority argued that this fact would have little impact on bribery and kickback cases. *Id*. at 2390 n.41. The *Skilling* majority cited several pre-*McNally* bribery and kickback cases involving public official-public, employee-employer, and union official-union member relationships as *examples* in support of its argument that the existence of a fiduciary relationship was "usually beyond dispute" in such cases. *Id*. This is altogether different, however, from stating that the application of § 1346 is limited to only those cases where the scope and source of the fiduciary duty was beyond dispute.

Moreover, even if, as Scanlon claims, the majority of pre-*McNally* bribery or kickbacks cases involved one of these three relationships, this does not mean that these examples represent an exhaustive list of the fiduciary relationships that can support an honest-services fraud prosecution, to the exclusion of other fiduciary relationships such as attorney-client, doctor-patient, or stockbroker-customer. Indeed, the Second Circuit acknowledged this point explicitly in *United States v. Rybicki*, 354 F.3d 124 (2d Cir. 2003), a decision cited approvingly by the *Skilling* Court. *See* 130 S. Ct. at 2929. After taking stock of the pre-*McNally* case law, the *Rybicki* court noted that "[a]lthough the bulk of the [private-sector] pre-*McNally* honest-services cases involved employees, we see no reason the principle they establish would not apply to other persons who assume a legal duty of loyalty comparable to that owed by an officer or employee to a private entity." 354 F.3d at 142 n.17. *See also United States v. Drury*, 687 F.2d 63 (5th Cir.

1982) (affirming pre-*McNally* honest-services fraud conviction of attorney who engaged in kickback scheme with physician).

Simply because defendant has found a set of common traits among the pre-*McNally* cases does not mean that this is the only way to conceptualize this body of case law, and at no point did *Skilling* hold that these three fiduciary relationships marked the outer boundaries of § 1346. *See, e.g.*, *United States v. Lupton*, 620 F.3d 790 (7th Cir. 2010) (affirming post-*Skilling* conviction under § 1346 of real-estate broker who defrauded client of right of honest services).

Perhaps cognizant of this fact, defendant proposes a an alternative, even more novel definition of so-called "core" kickback cases, which he terms the "analytical core." (Def.'s Mot. at 6.) Extrapolating from the three examples that he claims form the "literal core" of kickback cases, Scanlon argues that a kickback scheme falls outside the "analytic core" if an individual's duty to provide another with his honest services "depended upon the circumstances," or was "not constant, but variable." (*Id.*) Under this theory, honest-services fraud can be charged under § 1346 only where the fiduciary duties in question were "fixed and constant." (*Id.*) Unfortunately for Scanlon, at no point does *Skilling* draw such a distinction between "fixed and constant" fiduciary duties and those that are "variable" or "depend upon the circumstances," let alone hold that only the former fall within the ambit of § 1346.

But Scanlon misinterprets *Skilling* at an even more fundamental level. Scanlon's argument hinges on his interpretation of a single line from the majority's opinion in *Skilling*: "To preserve the statute without transgressing constitutional limitations, we now hold that § 1346 criminalizes *only* the bribe-and-kickback core of the pre-*McNally* case law." *Skilling*, 130 S. Ct. at 2931. Scanlon's interpretation of this sentence is flawed, and this flaw dooms his entire analysis.

Scanlon erroneously interprets the phrase "*only* the bribe-and-kickback core of the pre-*McNally* case law" as if it instead reads: "*only* bribe-and-kickback cases within the core of pre-*McNally* case law." Indeed, his motion rewords the language from *Skilling* in precisely this manner. (*See* Def.'s Mot. at 10.) If *Skilling* had in fact used such language throughout its opinion, then perhaps Scanlon's argument would be meritorious, as it would suggest that some kickback cases fall "within the core of pre-*McNally* case law" whereas others do not.

The *Skilling* majority, however, did not use this wording. It used the term "core" not, as Scanlon would have it, to distinguish "core bribe-and-kickback" cases from "non-core bribe-and-kickback cases," but rather to distinguish bribery and kickback cases (which *themselves constitute* the "core" of pre-*McNally* case law) from cases involving mere undisclosed self-dealing.[2] *See, e.g.*, *Skilling*, 130 S. Ct. at 2905 ("In the main, the pre-McNally cases involved fraudulent schemes to deprive another of honest services through bribes or kickbacks supplied by a third party who had not been deceived."); *id.* at 2929 ("While the honest-services cases preceding *McNally* dominantly and consistently applied the fraud statute to bribery and kickback schemes -- schemes that were the basis of most honest-services prosecutions -- there was considerable disarray over the statute's application to conduct outside *that core category*." (emphasis added)); *id.* at 2930 ("Although some applications of the pre-McNally honest-services doctrine occasioned disagreement among the Courts of Appeals, these cases do not cloud the doctrine's solid core: The 'vast majority' of the honest-services cases involved offenders who, in violation of a fiduciary duty, participated in bribery or kickback schemes."); *id.* at 2931 n.44 ("Given that the Courts of Appeals uniformly recognized bribery and kickback schemes as

---

[2] As defendant conceded at oral argument, this conclusion is fatal to his argument. (*See* 11/23/10 Tr. ("MR. BRAGA: If you analyze it that way, we lose, I must concede we lose if that's the analysis.").)

6

honest-services fraud before *McNally*, and that these schemes composed the lion's share of honest-services cases, limiting § 1346 to *these heartland applications* is surely 'fairly possible.'" (citations omitted) (emphasis added)); *id* at 2931 ("[T]here is no doubt that Congress intended § 1346 to reach *at least* bribes and kickbacks." (emphasis in original)). Even if the precise passage quoted by Scanlon might, in a vacuum, support more than one interpretation, the decision as a whole simply does not support the argument that *Skilling* intended for § 1346 to reach some kickback schemes but not others.

Finally, Scanlon argues that the facts of this case implicate constitutional questions similar to those at issue in *Skilling*. Because the fiduciary duties that Abramoff breached were "ill-defined," "elastic," and "innovative" rather than "fixed," Scanlon argues that constitutional "fair notice" concerns are implicated. (*See* Def.'s Mot. at 6-8.) In this regard, Scanlon's arguments mirror those of Justice Scalia, who repeatedly expressed similar concerns regarding the "indeterminate" source and scope of the fiduciary obligation requirement and argued that the majority's pruning of the § 1346 to encompass only bribery and kickback schemes did not solve this indeterminacy. *See Skilling*, 130 S. Ct. at 2937 n.1 (Scalia, J., dissenting) (arguing that while the Courts of Appeals pre-*McNally* "may have consistently found unlawful the acceptance of a bribe or kickback by one or another sort of fiduciary . . . they have not consistently described (as the statute does not) any test for who is a fiduciary"). Justice Scalia's position, however, did not carry the day. While the Court in *Skilling* could have chosen to limit the application of § 1346 to those bribery and kickback cases where the source and scope of the fiduciary duty was "fixed and definite," it did not do so, "perceive[ing] no significant risk" that vagueness concerns would "stretch[] [the honest-services statute] out of shape." *Skilling*, 130 S. Ct. at 2933.

In any event, even if this Court were to impose limitations on the scope of § 1346 beyond those described in *Skilling*, such a rule would little effect in this case, as it is abundantly clear, as Scanlon admitted as part of his plea, that Abramoff had a fiduciary duty to provide his clients with his honest services. The existence of a fiduciary duty depends on the relationship between the parties, and requires that the parties have "extended their relationship beyond the limits of . . . contractual obligations to a relationship founded upon trust and confidence." *Paul v. Judicial Watch, Inc.*, 543 F. Supp. 2d 1, 6 (D.D.C. 2008) (citation omitted); *Church of Scientology Int'l v. Eli Lilly & Co.*, 848 F. Supp. 1018, 1028 (D.D.C. 1994) ("The Restatement (Second) of Torts notes that a fiduciary relation exists when one party 'is under a duty to act for or give advice for the benefit of another upon matters within the scope of the relation.'" (citation omitted)).

Here, it is undisputed both that Abramoff had just such a duty to his clients and that Scanlon was aware of this fact:

> Scanlon knew that [Abramoff] promoted himself has having knowledge superior to his clients regarding lobbyist and grass roots activity and [Abramoff] encouraged his clients to trust his judgement in these matters. Scanlon believed that [Abramoff] had a duty to act in the best interest of his clients in these matters. Scanlon believed that [Abramoff]'s clients did in fact trust and rely upon [Abramoff].

(Factual Basis ¶ 6.)

Looking beyond this admission, the Court finds support for the existence of a fiduciary relationship between Abramoff and his clients in both the facts and the law. The District of Columbia Rules of Professional Conduct in effect at the time prohibited representation if the "lawyer's professional judgment on behalf of the client will be or reasonably may be adversely affected by the lawyer's responsibilities to or interests in a third party or the lawyer's own financial, business, property, or personal interests." D.C. Rules of Prof'l Conduct R. 1.7(b)(4). Although Abramoff was not himself a licensed attorney, he informed his clients that he worked

8

for the law firm Greenberg Traurig LLP, and his written agreements with the Tribes appeared on firm stationary.  In one of these letter agreements, Abramoff explicitly stated that the D.C. Rules of Professional Conduct would apply to the representation of the Tribes, and at no point did Abramoff disclaim applicability of the Rules.  (Opp. Exs. A-C.)  In addition, the D.C. Circuit has held that an attorney in the District of Columbia who accepted funds under a lobbying contract had fiduciary duties as an agent of his client.  *Rwanda v. Johnson*, 409 F.3d 368, 370-73 (D.C. Cir. 2005).  Although the lobbyist discussed in *Rwanda* was an attorney, the Court there located his fiduciary duty to his client not in the attorney-client relationship, but rather under the more general notion that agents owe a fiduciary duty to deal in their principle's interest and put the principle's interest above their own.  *Id.* at 372.

In sum, the Court finds no merit in the argument that Abramoff's fiduciary duty to his clients was so far removed from the paradigmatic examples of fiduciary duties that somehow defendant did not have "fair notice" that his conduct was criminal.  Indeed, Scanlon's kickback scheme *relied* upon the trust and confidence placed in Abramoff by his clients, as it allowed Abramoff to use his role as "professional advisor" to  discourage his clients "from seeking competitive pricing and proposals from grass roots and public relations vendors other than [Scanlon's company.]"  (Factual Basis ¶ 7.)  Having depended upon a relationship of trust and confidence in order to defraud Abramoff's clients, Scanlon cannot now claim surprise when that relationship forms the basis of the government's charges against him.  *See Skilling*, 130 S. Ct. at 2933 ("As to fair notice, . . . it has always been as plain as a pikestaff that bribes and kickbacks constitute honest-services fraud, and the statute's *mens rea* requirement further blunts any notice concern." (internal citations and quotation marks omitted)).  "A criminal defendant who

participated in a bribery or kickback scheme, in short, cannot tenably complain about prosecution under § 1346 on vagueness grounds." *Id*. at 2934.

## CONCLUSION

For the foregoing reasons, defendant's motion to modify or amend his plea agreement [Dkt. #47] is **DENIED**.

**SO ORDERED.**

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: November 30, 2010